826

UNITED STATES of America

v.

John BAZZANO, Jr. a/k/a "Johnny", a/k/a "J", Joseph De Marco a/k/a "Joe", Joseph Charles Yimin a/k/a "Bull", Charles Patrick Kellington a/k/a "Chuck", Francis Dattalo a/k/a "Frank", a/k/a "Hob", Attilio Policastro a/k/a "Flat Top", Primo Victor Mollica a/k/a "XG", John Franklin Matz a/k/a "Jack", a/k/a "Mayor", David Rankin Guffey a/k/a "Chief", a/k/a "Clairton Chief", John Regis Ward a/k/a "JP", a/k/a "Ward", Peter Paul Orsini a/k/a "Pete", a/k/a "Pete Orsi", Dominic Paul Serapiglia a/k/a "Wilson Constable", Thomas C. Poljak a/k/a "Eliz Chief", George B. Hines a/k/a "Eliz Constable".

Appeal of Primo Mollica.

No. 81–1936.

United States Court of Appeals,
Third Circuit.

Argued Feb. 4, 1982.

Reargued before the Court In Banc
Nov. 8, 1982.

Decided June 17, 1983.

Rehearing and Rehearing In Banc
Denied July 20, 1983.

Seitz, Chief Judge, and Sloviter, Circuit Judge, concurred in result and filed opinions.

Garth, Circuit Judge, dissented from affirmance and filed opinion.

Gibbons, Circuit Judge, filed dissenting opinion in which Aldisert, J., joined.

Adams, Circuit Judge, dissented from affirmance and filed opinion and statement sur petition for rehearing in which Hunter and Becker, JJ., joined.

Weis, Circuit Judge, filed statement sur petition for rehearing.

Vincent C. Murovich, Jr., Murovich, Reale & Fossee, Robert L. Potter (Argued), Titus, Marcus & Shapira, Pittsburgh, Pa., for appellant.

J. Alan Johnson, U.S. Atty., Paul J. Brysh (Argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Argued Feb. 4, 1982.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

Reargued In Banc Nov. 8, 1982.

Before SEITZ, Chief Judge, and ALDISERT, ADAMS, GIBBONS, HUNTER, WEIS, GARTH, HIGGINBOTHAM, SLOVITER and BECKER, Circuit Judges.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

PER CURIAM:

Primo V. Mollica appeals from an order entered on May 18, 1981 by the United States District Court for the Western District of Pennsylvania, revoking his probation and imposing a term of five years' imprisonment. For the reasons hereafter expressed, the judgment of the district court will be affirmed.

I.

On March 5, 1976, Mollica pleaded guilty to violations of 18 U.S.C. § 1955 (conducting an illegal gambling business), 18 U.S.C. § 1511 (conspiracy to obstruct law enforcement with intent to facilitate an illegal

gambling business), and 18 U.S.C. §§ 1961–1963 (RICO). On May 11, 1976, he was sentenced to five years' imprisonment and fined $15,000. Mollica's prison sentence was, however, suspended and he was placed on a five-year term of probation pursuant to 18 U.S.C. § 3651.

On February 19, 1981, Mollica was charged by Pennsylvania authorities with operation of a lottery, bookmaking, and conspiracy, in violation of 18 Pa.Cons.Stat. §§ 5512, 5514, and 903, respectively. Federal probation officials thereupon, on April 27, 1981, petitioned the district court to revoke Mollica's probation, alleging that Mollica had violated two of the conditions of his probation: that he refrain from violating any federal, state, or local law, and that he notify his probation officer immediately of any change in his residence. A hearing on the petition was set for May 8, 1981, two days before Mollica's five-year term of probation would expire.

At the hearing on May 8, Mollica sought to postpone the probation revocation proceedings until after the disposition of the state charges. The district court refused to delay the revocation proceedings because of its concern that such a postponement could result in its loss of jurisdiction over Mollica by virtue of the expiration of the five-year maximum probationary period prescribed by 18 U.S.C. § 3651. The court also denied Mollica's motion to suppress evidence that had been seized by Pittsburgh police officers during a search conducted on February 18, 1981, the court holding that even if the search warrant was defective, as Mollica alleged, the exclusionary rule did not apply to probation revocation proceedings.

At the revocation hearing, a Pittsburgh detective testified that he had received information from an informant that Mollica was conducting a telephone gambling business at the residence of Donna Stagno. After obtaining a search warrant, the detective and two other officers went to the Stagno residence, apprehended Mollica and

Stagno, and conducted a search of the house.

In what appeared to be the master bedroom, the police found two telephones and numerous sheets of paper and adding machine tapes containing numbers and the names of college and professional basketball teams. An FBI expert on sports betting operations testified that the sheets found in the bedroom represented incoming and outgoing bets for a two-week period totaling in excess of $1 million. The police also found in the room a sheet containing the name and telephone numbers of Mollica's probation officer, and Mollica furnished the officers with a key to a desk drawer in the room which contained $17,000 in cash. Prior to leaving the residence, Mollica, referring to Stagno, said to the police, "Why take her? It's all my stuff." However, a handwriting expert testified that the numbers on the sheets found in the bedroom were written by two different persons, neither of whom was Mollica.

Mollica unsuccessfully sought to have the court grant use immunity to him, to Stagno, and to Jerry Fimmano, who testified to having resided in the Stagno residence in early 1981 but who invoked his fifth amendment privilege against self-incrimination when asked about the gambling records found in the bedroom.

On May 18, 1981, eight days after the expiration of the five-year probationary period, which began May 11, 1976, the district court found that Mollica had violated the Pennsylvania lottery and bookmaking statutes, revoked his probation, and imposed a five-year term of imprisonment, the maximum sentence the court could at that time have imposed.[1]

In a Supplemental Appendix filed with this court prior to argument before the court *in banc,* we were informed that the state court had granted Mollica's motion for suppression of certain evidence and, having thereby suppressed the only evidence available to the Commonwealth, thereafter dis-

---

1. The court dismissed the charge that Mollica had violated his probation by failing to notify his probation officer of a change of residence.

missed Mollica's state proceeding on the ground of insufficient evidence.

In his appeal, Mollica now asserts:

(1) that the fourth amendment exclusionary rule is applicable to a probation revocation proceeding and thus that the district court erred in refusing to conduct a suppression hearing;

(2) that the district court was without power to revoke his probation and to reimpose his original five-year prison sentence when the maximum five-year period of probation allowed under 18 U.S.C. § 3651 had already expired at the time of the revocation;

(3) that even if the district court had the authority to revoke his probation, the court erred in not postponing the probation revocation hearing until after trial of the state charges underlying the revocation proceeding, or, alternatively, in not granting him use immunity in the revocation hearing;

(4) that the district court erred in reimposing his original sentence without stating its reasons for doing so;

(5) that the district court erred in not ordering disclosure of the identity of the informant whose information led to the search and seizure of the gambling materials; and

(6) that the district court erred in refusing to grant immunity to defense witnesses Stagno and Fimmano.

## II.

 For the reasons expressed in Judge Garth's separate opinion which follows, a majority of the court holds today that the Fourth Amendment exclusionary rule does not apply to probation revocation proceedings.

 Further, the court unanimously holds today that the district court did not err in holding that it had power to revoke Mollica's probation, in failing to state its reasons for the sentence, in not ordering disclosure of the informant's identity, or in refusing to grant immunity to defense witnesses Stagno and Fimmano. As to these issues, the court unanimously agrees that there was no error, for the reasons set forth in Judge Garth's separate opinion.

 The court is divided with respect to the remaining issue, that is, whether the district court erred in failing either to postpone the probation revocation hearing until after trial of Mollica's state charges or to grant Mollica use immunity if he chose to testify at the revocation hearing. This division results in an insufficient number of votes to reverse the district court. Four judges[2] would accept Mollica's argument and would therefore reverse the district court's judgment and remand for a hearing consistent with the principles urged on the court by Mollica. Three judges[3] would remand the case to the district court but for a more limited purpose, and would not authorize the district court to make use immunity available to Mollica. Two judges[4] would remand only for a Fourth Amendment suppression hearing. That relief, however, is no longer available, in light of the court's holding today that the exclusionary rule is inapplicable to probation revocation proceedings. One judge[5] would not remand for any purpose. On analysis, it is apparent that the differing grounds on which these various votes for remand are rested cannot be reconciled so as to yield a majority vote for a remand with consistent instructions to the district court as to the manner in which it is to proceed. Because a majority vote of this court is necessary to reverse the judgment of the district court, and because no such majority exists, the order of the district court denying postponement or use immunity cannot be reversed.

---

**2.** Judges Aldisert, Gibbons, Weis and Garth.

**3.** Judges Adams, Hunter and Becker.

**4.** Judges Higginbotham and Sloviter. Judges Aldisert and Gibbons, who would remand for a hearing at which use immunity would be made available to Mollica, see note 2, supra, would also remand for a suppression hearing, consistent with their view that the exclusionary rule is applicable to probation revocation proceedings.

**5.** Chief Judge Seitz.

Accordingly, having determined that the district court did not err in its rulings as to five of the issues raised by Mollica, and there being no majority to reverse the district court as to its ruling on the sixth (denying postponement or use immunity), the May 18, 1981 order of the district court will be affirmed.

GARTH, Circuit Judge:

The district court, among other rulings leading to the revocation of Mollica's probation, held that the fourth amendment exclusionary rule did not apply to probation proceedings; that it was not required to postpone its revocation proceedings until after Pennsylvania had concluded its own state proceedings against Mollica, nor, alternatively, was it required to make use immunity available to Mollica in the event Mollica sought to testify in the federal revocation hearing. I agree with the district court in all of its rulings, except its ruling denying postponement/use immunity.

In that one respect, I believe that the district court erred and, accordingly, that a remand should now be ordered for additional proceedings consistent with the discussion of postponement/use immunity set out in Part III, *infra* of this opinion. Because the court today affirms the district court judgment rather than reversing that judgment and directing a remand, I am obliged to dissent. My dissent from the court's affirmance, however, is limited solely to the court's failure to remand for the application of postponement/use immunity principles.

I.

*Applicability of the Exclusionary Rule to Probation Revocation Proceedings*

Mollica argues that the fourth amendment exclusionary rule is applicable in probation revocation proceedings, and that the district court therefore erred in refusing to conduct a suppression hearing with regard to the evidence obtained as a result of the search of the Stagno residence. We do not agree.

Of the seven courts of appeals that have considered the question whether the exclusionary rule is applicable to probation revocation proceedings, six have concluded that it is not. *See United States v. Frederickson,* 581 F.2d 711, 713 (8th Cir.1978) (per curiam); *United States v. Winsett,* 518 F.2d 51, 53–55 (9th Cir.1975); *United States v. Farmer,* 512 F.2d 160, 162–63 (6th Cir.), *cert. denied,* 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975); *United States v. Brown,* 488 F.2d 94, 95 (5th Cir.1973) (per curiam); *United States v. Hill,* 447 F.2d 817, 819 (7th Cir.1971); *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163 (2d Cir.1970) (parole revocation). *But see United States v. Workman,* 585 F.2d 1205, 1211 (4th Cir.1978) (holding that the rule is applicable).

Despite the substantial weight of authority against the application of the rule, we acknowledge that the question is a close one. Those who have argued in favor of the rule's applicability to probation revocation proceedings have stressed that since prosecutors frequently use a revocation proceeding as an alternative to trying the probationer on the new criminal charges, the same exclusionary practice should apply in revocation proceedings as does in a criminal trial. They assert that the Supreme Court has consistently applied the exclusionary rule to affirmative proof offered by the government in state and federal criminal trials, and has never exempted from the operation of the rule any adjudicative proceeding in which the government offers unconstitutionally seized evidence in direct support of a charge that may subject the victim of a search to imprisonment.

In addition, proponents of the exclusionary rule argue that probationers, despite their probationary status, still retain the basic constitutional right to be free from unreasonable searches and seizures, and that unbridled police intrusions into probationers' lives would disrupt any effort being made to rehabilitate them. They contend that as the courts create more and more exceptions to the exclusionary rule, the rule will no longer be an effective deterrent to police misconduct because the police will

soon come to believe that, notwithstanding the general rule of exclusion, some exception will nearly always be available under which the seized evidence will be admissible. Finally, they assert that application of the exclusionary rule in the probation context is required to prevent the integrity of the legal system from being tainted by the use of illegally obtained evidence.

On the other hand, those who have argued against the application of the exclusionary rule in the context of probation revocation have stressed that the exclusion of unconstitutionally seized evidence in the prosecution of substantive criminal offenses provides a sufficient deterrent to police misconduct. They claim that the exclusion of such evidence from revocation proceedings as well, would add only minimally to the rule's deterrent effect. At the same time, they assert, application of the rule would tend to obstruct the remedial and protective purposes of the probation system, by depriving the courts of relevant evidence bearing on the extent of the probationer's rehabilitation. Moreover, they contend, it would force probation officers to substitute for the informal process of evaluation of a probationer's rehabilitation the more time-consuming task of amassing formally admissible evidence.

Additionally, those who oppose exclusion note that the probationer differs from the ordinary citizen in that he has less of a right to be free from governmental supervision. They argue that considerations of judicial integrity are present whenever the government seeks to use illegally obtained evidence, yet the Supreme Court has declined to require such evidence to be suppressed in all circumstances. Finally, they observe that the availability of sanctions against police officers who conduct unlawful searches provides an adequate deterrent to such conduct without interfering in the probation process by the drastic exclusionary requirement that would deprive the authorities of relevant information. *See, e.g., United States ex rel. Sperling v. Fitzpatrick, supra,* 426 F.2d at 1164 (opinion of Hays, J.).

After considering these competing arguments, we are persuaded by the reasoning of those courts that have refused to apply the exclusionary rule in probation revocation proceedings. In our view, excluding from such proceedings reliable evidence bearing on a probationer's rehabilitation would contribute little to deterring constitutional violations while impeding society's interest in protecting itself against convicted criminals who have abused the liberty afforded them. Thus, applying the balance of interest analysis, utilized by the Supreme Court in determining whether to extend the exclusionary rule, leads us to hold that the exclusionary rule is inapplicable to probation revocation proceedings.

The balance to be struck between the competing interests involved in determining whether to extend the exclusionary rule has been clearly spelled out by the Supreme Court. In *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), faced with the question of whether the exclusionary rule should be extended to grand jury proceedings, the court stated:

> In deciding whether to extend the exclusionary rule to grand jury proceedings, we must weigh the potential injury to the historic role and functions of the grand jury against the potential benefits of the rule as applied in this context.

414 U.S. at 349, 94 S.Ct. at 620. This balancing test has been reaffirmed by the Supreme Court in subsequent decisions, *see Stone v. Powell,* 428 U.S. 465, 486–89, 96 S.Ct. 3037, 3048–50, 49 L.Ed.2d 1067 (1976); *United States v. Janis,* 428 U.S. 433, 453–54, 96 S.Ct. 3021, 3031, 49 L.Ed.2d 1046 (1976), and has been applied as well by courts of appeals dealing with the present issue, *see, e.g., United States v. Winsett,* 518 F.2d 51 (9th Cir.1975) (minimal deterrent effect of extending exclusionary rule to probation revocation proceedings outweighed by dangers the rule would pose to probation system); *United States v. Workman,* 585 F.2d 1205 (4th Cir.1978) (applying *Calandra* balancing test to conclude that exclusionary rule does apply to probation revocation proceedings).

■ Of substantial importance in the weighing of the interests involved is the principle that the rule is not a personal constitutional right of the party aggrieved, but rather is a device designed to deter violations of fourth amendment rights. *See Calandra,* 414 U.S. at 348, 94 S.Ct. at 620. In clarifying the interests to be balanced the Supreme Court has explained that "[t]he purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim.... Instead, the rule's prime purpose is to deter future unlawful police conduct." *Calandra,* 414 U.S. at 347, 94 S.Ct. at 619. "The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." *United States v. Calandra, supra,* 414 U.S. at 347–48, 94 S.Ct. at 619 (*quoting Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960)).

Thus, whether the rule should be extended to probation revocation proceedings must depend on whether its application will significantly enhance the rule's deterrent effect. For, if the marginal increase in deterrence stemming from the rule's application will be slight, then the balance of interests is unlikely to favor applying the rule and thereby depriving revocation proceedings of "'all the evidence which exposes the truth.'" *United States v. Calandra,* 414 U.S. 338, 351, 94 S.Ct. 613, 621, 38 L.Ed.2d 561 (1974) (quoting *Alderman v. United States,* 394 U.S. 165, 175, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969)).

The Supreme Court has noted that empirical determinations of the deterrent effect of the exclusionary rule have shed little light on the questions posed by this balance of interests. *See Janis, supra,* 428 U.S. at 449–53, 96 S.Ct. at 3029–32 (survey and criticism of empirical studies). As a result, the Court has "relied, instead, on its own assumptions of human nature and the interrelationship of the various components of the law enforcement system." *Janis, supra,* at 459, 96 S.Ct. at 3034.

■ When the police conduct a search, their aim generally is to convict the target of the search of a substantive offense, and they know that any unconstitutional conduct on their part incident to the search will be grounds for suppressing the evidence at the defendant's trial. Such evidence, when seized by state police officers, is excludable in both the state criminal trial on the substantive offense, *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and in any federal criminal trial, *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Thus, "the entire criminal enforcement process, which is the concern and duty of these [state] officers, is frustrated," *Janis, supra,* 428 U.S. at 448, 96 S.Ct. at 3029 (footnote omitted), and considerable deterrent effect arises from already existing applications of the exclusionary rule.

In determining whether the incremental deterrent effect of extending the exclusionary rule to various proceedings would be substantial, the Court has inquired into whether use of the evidence in the proceeding in question "falls outside the offending officer's zone of primary interest." *Janis, supra,* at 458, 96 S.Ct. at 3034. *See also Tirado v. Commissioner of Internal Revenue,* 689 F.2d 307, 311 (2d Cir.1982) ("The primary consideration is the relationship between the law enforcement responsibilities and expertise of the seizing officials and the type of proceeding at which the seized material is being offered.")

The "zone of primary interest" for state police officers is the acquisition of evidence for use in criminal proceedings, whether of the state or of the federal government. *Janis, supra* 428 U.S. at 458, 96 S.Ct. at 3034. The interest of state officers is greatest in state criminal proceedings, but extends to criminal proceedings of another sovereign by virtue of the law enforcement officers' interest in achieving some conviction. *See Janis, supra* at 458, 96 S.Ct. at 3034 (explaining *Elkins v. United States, supra* ). Yet the interest of state officers is attenuated to some extent by virtue of the

fact that such evidence is used in a proceeding by another sovereign.

In the present case, however, not only is the sovereign conducting the proceeding in question different from the sovereign to which the offending officers are responsible, but the proceeding in question is not the criminal trial which is of primary concern to law enforcement agents. As a result, it is unlikely that state law enforcement agents will be interested in seizing evidence that will be of use in a federal probation revocation proceeding. Thus, in the absence of evidence that the offending agents knew that the target of their search was a probationer,[1] the deterrent effect of excluding the relevant evidence will be substantially attenuated. *Cf. Janis, supra,* at 457–58, 96 S.Ct. at 3033.

That the target of the search might be on probation and the seized evidence thus of use in a revocation proceeding is not likely to cross the police officers' minds. In this light, since, in the case of such a typical search and seizure, the possibility of use of any seized evidence in a probation revocation hearing is relatively remote, there would appear to be little added deterrent effect from applying the exclusionary rule in probation revocation proceedings.[2]

Against this minimal increase in deterrence of police misconduct we must weigh "the potential injury to the ... role and functions of [probation]." *Calandra, supra,* 414 U.S. at 349, 94 S.Ct. at 620. In considering the effect on probation revocation proceedings of extending the exclusionary rule, it must be remembered that because the probationer has already been found guilty of a crime, and his liberty is only "conditional," *United States v. Basso,* 632 F.2d 1007, 1013 (2d Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1480, 67 L.Ed.2d 613 (1981), a revocation hearing is, in effect, more a resentencing than a taking of rights. As the Supreme Court indicated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the "full panoply of rights" due a defendant in a criminal prosecution is not available in a revocation proceeding. *Morrissey v. Brewer, supra,* 408 U.S. at 480, 92 S.Ct. at 2599. For example, the Government has a lesser burden of proof in revocation proceedings, *United States v. Manuszak,* 532 F.2d 311, 317 (3d Cir.1976), and the Federal Rules of Evidence (other than with respect to privileges) do not apply, Fed.R. Evid. 1101(d)(3).

These features of probation revocation proceedings do not imply, of course, that probationers do not possess the fourth amendment right to be free from unreasonable searches and seizures, or that that right is not protected by the warrant requirement. *See United States v. Rea,* 678 F.2d 382, 386–88 (2d Cir.1982); *United States v. Hallman,* 365 F.2d 289 (3d Cir. 1966).[3] Nevertheless, these features of probation revocation proceedings do reflect the fact that the state has a great interest in receiving all information available on the question of whether the probationer has

---

1. In this case we do not reach the question whether the exclusionary rule should be applied in a probation revocation proceeding if the police knew or had reason to know that the target of their search was a probationer. *See United States v. Rea,* 678 F.2d 382 (2nd Cir. 1982); *United States v. Winsett,* 518 F.2d 51, 55 (9th Cir.1975); *United States v. Brown,* 488 F.2d 94, 95 (5th Cir.1973) (per curiam). We expressly leave this question open. There is no evidence in the record of this case that the police who conducted the search knew or had reason to know that Mollica was on probation.

2. *United States v. Workman,* 585 F.2d 1205 (4th Cir.1978), relied upon by Mollica, in our view greatly overstates the deterrent effect of

applying the exclusionary rule in such a specialized context. *See id.* at 1210.

3. A refusal to apply the exclusionary rule in probation revocation proceedings would not be inconsistent with this court's decision in *United States v. Hallman,* 365 F.2d 289 (3d Cir.1966). In *Hallman,* we did state that "Hallman was not without basic rights because he was a parolee," *id.* at 291, and suppressed evidence seized as a result of an unlawful search. But the evidence in *Hallman* was sought to be used in Hallman's trial on the substantive offense of bank robbery, and not in connection with a revocation of Hallman's parole. *Hallman* is thus readily distinguishable from the instant case.

observed the conditions of his probation. As the Supreme Court stated in *Morrissey v. Brewer,* 408 U.S. 471, 483, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972):

> The State has found the parolee guilty of a crime against the people. That finding justifies imposing extensive restrictions on the individual's liberty. Release of the parolee before the end of his prison sentence is made with the recognition that with many prisoners there is a risk that they will not be able to live in society without committing additional antisocial acts. Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.

Application of the exclusionary rule to probation revocation proceedings would interfere significantly with the state's ability to ensure that conditions of probation were being met. As a result, the state's ability to protect society from additional antisocial acts committed by probationers, and ultimately its ability to achieve the remedial purposes of the probation system, would be impaired. *See Winsett, supra,* at 54–55.[4]

Accordingly, we conclude that there was no justification for applying the exclusionary rule in the context of Mollica's probation revocation proceeding. As was stated in *United States ex rel. Sperling v. Fitzpatrick, supra,* "The exclusionary rule is believed to be a necessary restraint on the adversarial zeal of law enforcement officials. 'As it serves this function, the rule is a needed, but grudgingly taken, medicament; no more should be swallowed than is needed to combat the disease.'" 426 F.2d at 1163 (opinion of Hays, J.) (footnote and citation omitted).

## II.

### *The District Court's Power to Revoke Probation After Expiration of the Five-Year Statutory Period*

Mollica argues that, because at the time his probation was revoked, the five-year time limit on probation established by 18 U.S.C. § 3651 had expired, the district court lacked subject matter jurisdiction to effect the revocation, even though revocation proceedings had formally begun with a Petition to Revoke Probation *prior* to the expiration of the five-year period.

18 U.S.C. § 3651 provides in relevant part:

> Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

> \* \* \* \* \* \*

---

4. The Ninth Circuit in *Winsett, supra,* observed:

> The primary purpose of probation, which has become an integral part of our penal system, is to promote the rehabilitation of the criminal by allowing him to integrate into society as a constructive individual, without being confined for the term of the sentence imposed.... An important aspect of our probation system is the placing of certain restrictions on the probationer, such as the requirement that he not associate with criminals or travel outside the judicial district. These conditions serve a dual purpose in that they enhance the chance for rehabilitation while simultaneously affording society a measure of protection. Because violation of probation conditions may indicate that the probationer is not ready or is incapable of rehabilitation by integration into society, it is extremely important that *all reliable* evidence shedding light on the probationer's conduct be available during probation revocation proceedings.
>
> Consequently, to apply the exclusionary rule to probation revocation hearings would tend to frustrate the remedial purposes of the probation system.

518 F.2d at 54–55 (citation and footnote omitted).

The court may revoke or modify any condition of probation, or may change the period of probation.

The period of probation, together with any extension thereof, shall not exceed five years.

\* \* \* \* \* \*

The defendant's liability for any fine or other punishment imposed as to which probation is granted, shall be fully discharged by the fulfillment of the terms and conditions of probation.

A later portion of the statute, 18 U.S.C. § 3653, provides that as long as a warrant for the arrest of the probationer is issued within the five-year period, the district court may revoke the probationer's probation:

At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period.

\* \* \* \* \* \*

As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

Thus, the statute suggests that as long as formal revocation proceedings are commenced (by arrest warrant or otherwise) within the five-year period, probation can be revoked, even if the revocation hearing starts and the actual revocation takes place after the end of the five-year period.

Indeed, all the cases support this view. *See Nicholas v. United States,* 527 F.2d 1160 (9th Cir.1976); *United States v. Strada,* 503 F.2d 1081 (8th Cir.1974); *United States v.* *Bartholdi,* 453 F.2d 1225 (9th Cir.1972). In *Nicholas,* for example, the court stated:

The district court had jurisdiction to execute the remainder of Nicholas' sentence, even if the five-year probationary period had expired, because a bench warrant had been issued for his arrest within the initial five-year period, and the hearing upon revocation was held within a reasonable time after execution of the warrant.

527 F.2d at 1161 (citation omitted). This court recently rejected an argument similar to Mollica's in the context of parole revocation. *Franklin v. Fenton,* 642 F.2d 760, 764 (3d Cir.1980) ("Since the original warrant was issued within the petitioner's original term, it could be executed thereafter.")

[4] It is difficult to think of a reason why a court should arbitrarily lose jurisdiction at the end of the five-year statutory period when the alleged probation violation took place within the five-year period and the probationer was formally notified within that period that the Government would seek to revoke his probation. The five-year provision has not been applied mechanically in other contexts; for example, its running has been tolled during periods when the probationer was not in fact under probationary supervision by virtue of his own wrongful act. *See United States v. Workman,* 617 F.2d 48, 51 (4th Cir.1980); *United States v. Lancer,* 508 F.2d 719, 733–34 (3d Cir.) (in banc), *cert. denied,* 421 U.S. 989, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975). Thus, since the proceedings to revoke Mollica's probation were commenced within the five-year period of 18 U.S.C. § 3651, the revocation of Mollica's probation was not time-barred.

### III.

### *Postponement of the Revocation Hearing; Use Immunity*

I preface the following discussion of postponement/use immunity with the caveat that, as the *per curiam* opinion announcing the judgment of the court reflects, the court is divided in its views on this issue,

with no one view commanding a majority. Thus the order of the district court from which Mollica appeals must be affirmed.

The discussion that follows in this section adopts the argument advanced by Mollica. That argument, if accepted by a majority of the court, would require a reversal and a remand to the district court for further proceedings conforming to the principles urged by Mollica and discussed below. However, as noted, no majority exists for this position and the succeeding discussion represents the view only of the author of this opinion and those members of the court, Judges Aldisert, Gibbons and Weis, who have joined with him: a minority. Points of view which differ from the discourse that follows are to be found in the separate opinions of the various members of the court.

### A.

■ Mollica argues that when a probation revocation hearing is held prior to the disposition of related criminal charges, the probationer is faced with a dilemma. If he chooses to testify in the probation revocation hearing, he may compromise his constitutional privilege against self-incrimination in connection with the related criminal proceeding. If he decides not to testify in the revocation hearing, his probation may be revoked even though he may later be acquitted of the related criminal charges. Thus, Mollica argues that the proper procedure is for the probation revocation proceedings to be postponed until after the related criminal charges are resolved, and if postponement is not desired by the Government and the revocation hearing is held first, for the probationer to be given use immunity so that he can testify without penalty in the revocation proceeding. *Cf. Simmons v. United States*, 390 U.S. 377, 389–94, 88 S.Ct. 967, 973–77, 19 L.Ed.2d 1247 (1968) (defendant's testimony at suppression hearing inadmissible at trial). At this point in time, Mollica's argument is also reinforced by the fact that mere postponement of the revocation hearing would not prejudice the Government because, as we

have concluded in Part II, *supra*, revocation proceedings need only be commenced by arrest warrant, petition, or otherwise, within the five-year limitations period of 18 U.S.C. § 3651. Thus, the revocation hearing itself would not have to be commenced or completed within that period. Neither would postponement endanger the public, Mollica argues, because, if necessary and appropriate, a probationer who is accused of violating the terms of his probation can be taken into custody pending the outcome of the revocation hearing, the propriety of which is an issue neither presented by nor addressed on this appeal.

Mollica argues additionally that, even though the state court granted his motion for suppression of the only evidence available to the Commonwealth, and thereafter dismissed the proceeding against Mollica on the grounds of insufficient evidence, this circumstance does not moot the issue presented to us. He points out that the charges were merely dismissed and that *he was not acquitted.* He also points out that, because additional evidence not available to the state when it dismissed his charges might become available as a result of his testimony at a probation revocation hearing, his dilemma, which led to this appeal, would still obtain. Thus, he argues that, even though a postponement of the probation revocation hearing is no longer a realistic alternative because the state action against him has concluded, nevertheless, the possible revival of the state charges still requires our adherence to the procedure which he proposes.

Mollica here does not argue that postponement of revocation hearings or the giving of use immunity are constitutionally required. Courts in numerous cases have held that they are not. *See Ryan v. State of Montana*, 580 F.2d 988 (9th Cir.1978), *cert. denied*, 440 U.S. 977, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); *United States v. Brugger*, 549 F.2d 2 (7th Cir.), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2186, 53 L.Ed.2d 231 (1977); *Flint v. Mullen*, 499 F.2d 100 (1st Cir.), *cert. denied*, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974). *But see Melson*

*v. Sard,* 402 F.2d 653 (D.C.Cir.1968) (per curiam). Rather, Mollica argues that this court should impose a postponement/use immunity requirement as an exercise of its supervisory power over the district courts in this circuit.

As Mollica notes, there is substantial support for the view that probation revocation proceedings should be postponed until after the disposition of the criminal charges upon which revocation would be based. For example, the ABA's Standards Relating to Probation § 5.3 (Approved Draft 1970), provide that

> [a] revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. However, upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge.

As the commentary to that section explains:

> The relative informality of a probation revocation proceeding, as compared to the trial of an original criminal charge, underlines the danger. Relaxation of rules of admissibility of evidence, the absence of a jury, a lesser burden of proof—factors such as these can lead to an abuse of the proceeding by basing revocation upon a new criminal offense when the offense could not be proved in an ordinary criminal trial. Additional complexity is introduced by the position in which the probationer is put as regards his privilege against self-incrimination: a revocation proceeding before trial of the charge on which it is based well could compromise the assertion of this fundamental constitutional right....
>
> These problems can be minimized if the probation revocation proceeding is postponed until after the disposition of the new criminal charge. The record will then be clear and the possibilities of unfairness to the probationer will have been sharply reduced, particularly as they involve the privilege against self-incrimina-

tion. This standard accordingly suggests such postponement as an operating policy.

(citations omitted.) *See also* Model Penal Code § 301.3 (1962). Indeed, Mollica's probation officer testified at the revocation hearing that it is the standard policy of the United States Probation Office to delay federal probation revocation proceedings until after disposition of pending state criminal charges. App. at 286.

The leading case on this subject is *People v. Coleman,* 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975), in which the Supreme Court of California, exercising its supervisory power over lower California courts, announced that the testimony of a probationer at a probation revocation hearing held prior to the disposition of criminal charges arising out of the alleged violation of the conditions of his probation, and any evidence derived from such testimony, may not be used against the probationer by the prosecution in its case-in-chief on the related criminal charges. *Id.* at 889, 120 Cal. Rptr. at 402, 533 P.2d at 1042. The supreme courts of Alaska, Rhode Island, and Wisconsin have taken similar positions. *See McCracken v. Corey,* 612 P.2d 990 (Alaska 1980) (parole revocation); *State v. DeLomba,* 117 R.I. 673, 370 A.2d 1273 (1977); *State v. Evans,* 77 Wis.2d 225, 252 N.W.2d 664 (1977). *See also People v. Carr,* 185 Colo. 293, 524 P.2d 301 (1974). The Ninth Circuit in *Ryan, supra,* while declining to hold that use immunity was constitutionally required, recognized the desirability of such a procedure:

> If our opinion as to the wisdom of the Montana rule were dispositive, we might prefer the California procedure, mandated by the state court under its supervisory power, which provides use immunity for a probationer's testimony if it is given at a revocation hearing held prior to trial on criminal charges which were the basis for the revocation proceeding.... It is not unreasonable to conclude that the lesser standard of proof at a revocation proceeding and the objectives of making an accurate determination of revocation

charges and a proper assessment of the penalty to be imposed are factors that make it proper for a state to encourage testimony by a grant of use immunity. 580 F.2d at 994 (citation omitted).

### B.

I am persuaded by Mollica's argument, and agree that it is the better practice for probation revocation proceedings to await completion of the state criminal trial on the substantive charge giving rise to the revocation proceeding. If the government were to insist, or if the district court decided in its discretion, that probation revocation proceedings must be held prior to the disposition of the criminal charge, I agree that the defendant should be given use immunity to testify in the revocation proceeding. The determination as to which of these courses to follow would necessarily rest in the sole discretion of the district court, which should articulate on the record the reasons for its determination.

If such a practice were to be required in the instant case, we would obviously be obliged to reverse and remand for application of the procedure described. However, as has been pointed out, there is no majority of the court subscribing to Mollica's argument to reverse and remand for application of the procedure he urges upon us. Rather, while some members of the court, who subscribe to this discussion, agree that a remand should be ordered for application of the rule advocated by Mollica, other members of the court would remand, but only for the purpose of ensuring that Mollica's right to testify was not compromised by the district court's doubts about its jurisdiction.[5]

This division of the court has resulted, as stated by the *per curiam* opinion announcing the judgment of the court, in a judgment affirming the district court's order of May 18, 1981. Because of my conviction that a remand is necessary so that the district court may either postpone the probation revocation hearing until state proceedings have been completed or make use immunity available to Mollica, I disagree with the court's disposition, and therefore dissent.

### IV.

Mollica raises several other objections to the probation revocation proceedings before the district court. We reject Mollica's arguments for the reasons that follow.

### A.

### *Statement of Reasons for Imposing Sentence*

Mollica contends that the district court should have explained on the record why, after he had successfully completed almost all of his probationary period, it had resentenced him to the five-year term of imprisonment it had originally imposed. Federal appellate courts generally do not require trial courts to state reasons for the imposition of the sentences they impose. *See, e.g., United States v. Vasquez,* 638 F.2d 507, 534 (2d Cir.1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1490, 67 L.Ed.2d 620, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135, 454 U.S. 975, 102 S.Ct. 528, 70 L.Ed.2d 396 (1981); *United States v. Garcia,* 617 F.2d 1176, 1178 (5th Cir.1980); *United States v. Del Piano,* 593 F.2d 539, 540 (3d Cir.) (per curiam), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315 (1979); *United States v.*

---

**5.** If a remand were ordered out of concern that Mollica's right to testify was impaired by the district court's doubts about its jurisdiction, then Mollica would face the same dilemma he formerly faced. He could choose to testify only at the risk of supplying the very evidence that the state needs in order to indict him. It should be remembered that the state, after having excluded the evidence that arose from the search of the Stagno residence, then dismissed charges against Mollica for lack of evidence.

Thus, it would appear that on this limited remand Mollica could not testify without furnishing the very evidence the lack of which led to the dismissal of the state charges. I do not think it likely that any purpose would be served by such a limited remand, because in the almost certain event that Mollica chose not to testify, for fear of furnishing evidence to the state, the district court would be placed in exactly the same position it was in after the first hearing.

*Thompson,* 541 F.2d 794, 795 (9th Cir.1976) (per curiam). Although this rule has been criticized by a member of this court, *see, e.g., United States v. Bazzano,* 570 F.2d 1120, 1130–38 (3d Cir.1977) (Adams, J., concurring in the judgment) (collecting authorities), *cert. denied,* 436 U.S. 917, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978), we have continued to adhere to it.

Whatever justification exists for requiring a trial court to explain its reasons when initially imposing sentence, there is far less justification for requiring a court to give reasons when it merely reinstates its earlier sentence after finding that the defendant had violated his probation. True, it is not inevitable that courts will reimpose the original sentence upon finding a probation violation, and there may be good arguments in a given case for not doing so. But when a defendant has violated the terms of his probation—even toward the end of the probationary period—it indicates to the court that it erred in its original determination that the defendant did not need to serve his prison sentence in order to be rehabilitated. That being the case, the court is justified, without more, in concluding that it should do now what it could have done initially: impose the original prison term without probation. The probation statute, 18 U.S.C. § 3653 (1976), expressly gives the court this option. *See United States v. Lancer, supra,* 508 F.2d at 726–27.

■ Since Mollica's sentence is within the statutory limits, it is not subject to challenge. *United States v. Dansker,* 581 F.2d 69, 75 (3d Cir.1978); *Government of the Virgin Islands v. Richardson,* 498 F.2d 892, 894 (3d Cir.1974). As the Supreme Court said in *Dorszynski v. United States,* 418 U.S. 424, 443, 94 S.Ct. 3042, 3052, 41 L.Ed.2d 855 (1974), "well-established doctrine bars review of the exercise of sentencing discretion." For these reasons, Mollica's objection to his sentence must fail.

## B.

### *Disclosure of Informant's Identity*

In *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Su-preme Court recognized that there is a qualified privilege possessed by the Government to refuse to disclose the identity of a confidential informant from whom it has received information about alleged criminal activity. In determining whether the privilege should be sustained, a court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. at 628.

■ Mollica's argument, as to why the identity of the informant here would be useful, is vague. "[M]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity." *United States v. Estrella,* 567 F.2d 1151, 1153 (1st Cir.1977) (citations omitted). So far as appears, the informant's role in this case was nothing more than that of allegedly providing the police with probable cause for conducting their search, and we have already held in Part II *supra* that the fruits of the search are not subject to suppression even if the search warrant was defective. The evidence of Mollica's guilt consisted primarily of the physical evidence seized during the search. Where an informant's role was in validating a search, disclosure of his identity is not required. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Mollica has failed to present a convincing argument that the informant played any more important role in the Government's case or in his defense.

## C.

### *Refusal to Grant Defense Witness Immunity*

Mollica argues that the district court erred in refusing to grant immunity to defense witnesses Stagno and Fimmano. As a result, both Stagno and Fimmano invoked their fifth amendment privilege when called to the stand. In *United States v. Herman,* 589 F.2d 1191 (3d Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979), this court discussed two situations in which the due process clause

might compel the granting of immunity to defense witnesses: one statutory and one judicial.

First, *Herman* noted that in cases where Government actions denying use immunity to defense witnesses were undertaken with the "deliberate intention of distorting the judicial fact finding process," the court has the remedial power to order acquittal unless on retrial the Government grants statutory immunity. *Id.* at 1204 (citing *United States v. Morrison,* 535 F.2d 223 (3d Cir.1976)). Second, *Herman* observed that in certain cases a court may have "inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense." *Id.*

In *Government of Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980), we gave content to both bases of defense witness immunity when we vacated the sentences of certain defendants and remanded for evidentiary proceedings respecting these principles. In particular, we set out the requirements for invoking judicially fashioned defense witness immunity:

> [B]efore a court can grant immunity to a defense witness, it must be clear that an application has been made to the district court naming the proposed witness and specifying the particulars of the witness' testimony. In addition, the witness must be available and the defendant must make a convincing showing sufficient to satisfy the court that the testimony which will be forthcoming is both clearly exculpatory and essential to the defendant's case. Immunity will be denied if the proffered testimony is found to be ambiguous, not clearly exculpatory, cumulative or if it is found to relate only to the credibility of the government's witnesses.

615 F.2d at 972 (footnote omitted).

■ In this case, Mollica had made no showing of governmental conduct which would warrant a grant of statutory immunity. There was no evidence of any attempt on the part of the prosecution to distort the facts of the case by keeping Stagno and Fimmano from testifying.[6] Nor was there evidence of any other governmental action or misconduct which would fall within the *Morrison-Herman* standard. As we said in *Smith,* "[a]bsent [such] prosecutorial misconduct, a defendant is foreclosed from insisting that statutory immunity be granted his witness." *Id.* at 968.

■ As for "judicially fashioned" immunity, Mollica clearly failed to make "an application ... to the district court naming the proposed witness and specifying the particulars of the witness' testimony." *Id.* at 972. At no time during the revocation hearing did Mollica tell the district court what testimony either Stagno or Fimmano would give were they to be provided with immunity. The belated affidavit of Mollica's counsel, asserting that Fimmano would have exculpated Mollica had Fimmano been given immunity and testified, cannot cure the fact that no such representation was made to the district court at the hearing. Furthermore, there has never been any representation as to how Stagno's testimony would have exculpated Mollica. Under these circumstances, the district court did not err in refusing to grant Stagno and Fimmano the immunity which *Smith* authorizes.

## V.

### Conclusion

I agree that as to all issues raised on appeal by Mollica, other than the postponement/use immunity issue, the district court's order of May 18, 1981 should be upheld. However, because I would reverse and remand to the district court so that it

---

**6.** Mollica suggests that the Government knew that the handwriting on the betting slips found in Stagno's bedroom was that of Fimmano. The record does not bear out this suggestion. Fimmano had testified on direct examination, but his testimony was stricken when he refused to answer particular questions on cross-examination.

might conduct further proceedings consistent with Mollica's postponement/use immunity argument (see Part III, *supra*), I must respectfully dissent from the judgment of the court affirming the district court's order.

SEITZ, Chief Judge.

In my view, the district court did not deprive appellant Mollica of any constitutional right by requiring him to choose whether to testify at his probation revocation hearing at the risk that his testimony or evidence derived therefrom might be used against him in a subsequent criminal trial. Also, I do not think it is a proper invocation of our supervisory power to require a district court either to postpone a probation revocation hearing based on pending state criminal charges until the resolution of those charges, or to grant the probationer use immunity. A postponement decision is a matter best left to the discretion of the district court, and use immunity is unjustified in this context because it may result in a substantial burden on the state law enforcement function. Finally, although I believe the district court abused its discretion by basing its denial of Mollica's request for postponement or use immunity on a misperception of law, I would not remand to the district court for further proceedings because of the present posture of the case.

## I.

On March 5, 1976 Mollica pleaded guilty to violations of 18 U.S.C. § 1955 (conducting an illegal gambling business), 18 U.S.C. § 1511 (conspiracy to obstruct law enforcement with intent to facilitate an illegal gambling business), and 18 U.S.C. §§ 1961–1963 (RICO). He was sentenced to five years' imprisonment and fined $15,000. The district court suspended his prison sentence and placed him on a five year term of probation pursuant to 18 U.S.C. § 3651.

On February 18, 1981 Pittsburgh police officers conducted a search of a house owned by Donna Stagno. The police had obtained a warrant for this search based on information received from an undisclosed informant, who indicated that Mollica was conducting a telephone gambling business at the Stagno residence. The search produced several pieces of evidence substantiating the informant's allegation.

Based on this and other evidence gathered on February 18, Pennsylvania authorities charged Mollica with operation of a lottery, bookmaking, and conspiracy in violation of 18 Pa.Con.Stat. §§ 5512, 5514 and 903, respectively. On August 13, 1982 the Court of Common Pleas of Allegheny County, Pennsylvania granted a motion to suppress certain evidence implicating Mollica in the alleged criminal activity. The Commonwealth did not appeal the suppression order, and on August 13, 1982 the Court of Common Pleas granted a motion of the Commonwealth to dismiss the indictment.

Meanwhile, federal probation officials on April 27, 1981 had filed a petition in the district court to revoke Mollica's probation. The petition alleged that the evidence produced by the February 18, 1981 search revealed that Mollica had violated a condition of his probation requiring him to refrain from violating any federal, state or local law. The district court entered an order on April 27, 1981 requiring Mollica to appear before the court on May 8, 1981 and show cause why his probation should not be revoked. The May 8, 1981 date was two days before Mollica's five-year term of probation would expire.

At the May 8 hearing, Mollica requested that the district court either postpone the probation revocation proceedings until after the disposition of the state charges or grant him use immunity. Fearing that his testimony at the probation revocation hearing would be used against him in the state criminal proceedings, Mollica contended that either postponement or use immunity was required by fundamental fairness.

The district court refused Mollica's request for postponement and proceeded with the revocation hearing. Mollica chose not to testify. The district court entered an order revoking Mollica's probation, from which Mollica brings this appeal.

## II.

Mollica argues that "[w]here the prosecutor insists on conducting a probation hearing prior to trial on the state charges, then a limited use immunity therefore must arise in favor of the probationer under the privilege against self-incrimination of the U.S. Constitution." This Fifth Amendment guarantee, however, protects the individual only against *compelled* self-incrimination. *See Hoffa v. United States,* 385 U.S. 293, 303–04, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966).

In *McGautha v. California,* 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1970), *vacated on other grounds,* 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1971), the Supreme Court held that no impermissible coercion resulted when a defendant in a state single-verdict trial system was required to choose whether to stand on his right against self-incrimination at the risk that his failure to testify would be damaging on the issue of punishment. *Id.* at 217, 91 S.Ct. at 1472. I can perceive no principled basis for distinguishing *McGautha* from the instant case, in which Mollica was required to choose whether to stand on his right against self-incrimination at the risk that his failure to testify would be damaging concerning probation revocation.[1] Therefore, I cannot conclude that Mollica was under the kind of compulsion that violates the privilege against self-incrimination.

Mollica also argued before the district court that use immunity was necessary as a matter of "fundamental fairness". Although he did not elaborate further on this contention, I presume he meant to suggest that forcing him to choose between exercising his constitutional right to be heard in person at his probation revocation hearing, *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1982), and preserving his privilege against self-incrimination at the state criminal proceedings, violates due process.

I am not unappreciative of the difficulty of this choice. Yet, not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is constitutionally impermissible. *Corbitt v. New Jersey,* 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978). The threshold question in this regard is whether compelling an election impairs to an appreciable extent any of the policies underlying the constitutional rights asserted. *McGautha v. California,* 402 U.S. at 213, 91 S.Ct. at 1470 (state unified guilt-punishment criminal trial system does not violate due process; choice between exercising right of allocution at punishment stage and preserving privilege against self-incrimination at guilt stage does not appreciably undermine policies underlying either right).

As I have indicated, Mollica's forced election of rights did not violate his right against self-incrimination. Therefore, I must conclude also that this election did not impair to an appreciable extent any of the policies underlying that right. *McGautha v. California,* 402 U.S. at 217, 91 S.Ct. at 1472.

Neither did Mollica's forced election impair to an appreciable extent any of the policies underlying his due process right to be heard in person at his probation revocation hearing. Identification of the precise dictates of this due process right requires a careful balancing of the private interest that will be affected by the official action against the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would

---

1. In *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1971), the Supreme Court held unconstitutional a state statute that required a defendant desiring to testify in a criminal proceeding to do so before any other testimony for the defense was heard. *Id.* at 606, 92 S.Ct. at 1892. *Brooks* is distinguishable from the instant case because in *Brooks* the defendant was required to choose whether to stand on his right against self-incrimination at the risk that his failure to testify would be damaging on the issue of *guilt.* In my view, the risk of conviction and consequent punishment to a defendant presumed innocent until proven guilty is more coercive than the risk of added punishment to a probationer, such as Mollica, who already has been convicted.

entail. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975).

The individual interests protected by the due process right to be heard in person at a probation revocation hearing include personal participation in the revocation process, and bringing to the court's attention evidence peculiarly within the probationer's own knowledge. Yet, neither of these interests is substantially undermined by a requirement that a probationer must choose whether to be heard at the expense of waiving the privilege against self-incrimination. *See McGautha v. California,* 402 U.S. at 220, 91 S.Ct. at 1474 (same individual interests, which also underlie due process right to be heard at sentencing assumed to exist for purpose of argument, not undermined by requiring defendant to risk that statements made regarding punishment will be damaging with regard to guilt).

By contrast, the Government's interests weigh heavily against relieving the probationer of the above election either by postponing probation revocation hearings or by granting the probationer use immunity. As I will later suggest, postponement may result in substantial expense and inconvenience to federal probation officials, while use immunity would impose on the government the substantial burden in a subsequent criminal prosecution of proving that its evidence was derived from a source wholly independent of the probationer's previously immunized testimony. Therefore, as I balance the *Mathews v. Eldridge* factors, I cannot say that the election required of Mollica deprived him of the due process right to be heard in person at his probation revocation hearing.

### III.

Mollica argues in the alternative that this Court should promulgate a supervisory rule which requires a district court either to postpone a probation revocation hearing based on pending state criminal charges until the resolution of those charges, or to grant the probationer use immunity. I need not decide whether the supervisory rule proposed by Mollica would be the better practice, because I believe the subject matter of Mollica's so-called "dilemma" is ill-suited to a proper invocation of our supervisory power. Moreover, I am not convinced that there is any substantial need for such a rule, given the admission of the United States probation office that its general policy is to delay the institution of probation revocation proceedings until the disposition of state criminal charges. *See United States v. Tonelli,* 577 F.2d 194, 196 (3d Cir.1978) (supervisory rule requiring that putative defendants be advised of Fifth and Sixth Amendment rights before testifying in grand jury proceeding unnecessary in light of Justice Department's adoption of this practice).

Whatever its source,[2] there is no doubt that this Court has supervisory power to promulgate rules of practice and procedure for the better administration of the judicial process. Clearly, however, not every problem faced by a district court is properly the subject of a supervisory rule. Instead, some matters are best left to the sound discretion of the district court. This is particularly the case when resolution of an issue demands the weighing and balancing of several factors, or when the district court is in a better position to resolve a dispute by virtue of its proximity to the facts.

### A. *Postponement*

In my opinion, the district court is in the best position to balance the several considerations relevant to whether probation revocation hearings based on state criminal

---

**2.** Commentators have suggested that a court of appeals' supervisory power may be justified either as an inherent power, Hill, *The Bill of Rights and the Supervisory Power,* 69 Colum.L. Rev. 191, 195 (1969), or as a power impliedly delegated by Congress' enactment of the Court of Appeals Act. Schwartz, *The Exercise of the Supervisory Power by the Third Circuit Court of Appeals,* 27 Vill.L.Rev. 506, 514–25 (1981–82). It is unnecessary for me to decide whether either or both of these sources is the basis of the supervisory authority of the courts of appeals, since the Supreme Court has expressly affirmed the legitimacy of this power. *Bartone v. United States,* 375 U.S. 52, 54, 84 S.Ct. 21, 22, 11 L.Ed.2d 11 (1963) (per curiam).

charges should be postponed until the resolution of those charges. One of these considerations, for example, is the inconvenience that may result from an untimely motion for postponement. *United States v. Turkish,* 623 F.2d 769, 777–78 & n. 5 (2d Cir.1980) (district court's refusal to grant defense witness immunity did not deny constitutionally protected fairness because demand for immunity was untimely and would, if granted, have resulted in substantial inconvenience to prosecution), *cert. denied,* 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981). In the instant case, Mollica did not make his request for postponement or use immunity until his probation revocation hearing had begun. For the district court to have granted this request might have resulted in serious inconvenience; probation officials argued that several of their witnesses were from out of town, and could be returned to a second probation revocation hearing, if at all, only at added expense.

Similarly, the status of a pending state criminal proceeding may determine whether postponement is the appropriate course of action. For example, in the instant case postponement would not be a viable alternative at the present time, since there exist no pending criminal charges the disposition of which could mark the time at which the probation revocation hearing would be recommenced.

Postponement also might be inappropriate when the request for postponement occurs at the inception of the state criminal process. Because state criminal proceedings may continue for some time,[3] delay of a probation revocation hearing may result in the loss of evidence, the disappearance or death of witnesses, or other forms of prejudice to the government.

By contrast, it might cause federal probation officials little inconvenience if the district court were to grant postponement of probation revocation hearings when the state criminal trial is near completion. Presumably, the probation revocation proceedings could be resumed shortly, with little likelihood that the delay will have resulted in any harm to the government's case. In any event, the district court will be in the best position to assess the inconvenience that may result from a long delay, and to assign this inconvenience its proper weight.

### B. *Use Immunity*

Without doubt, a supervisory rule requiring district courts to grant use immunity to a probationer who faces the same sort of election as did Mollica would advance the federal interest in avoiding revocations of probation based on erroneous information or an erroneous evaluation of the need to revoke probation. *Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972). Nevertheless, the Supreme Court has held that courts of appeals should not promulgate a supervisory rule implementing such a non-constitutionally required goal when the rule would impose a significant corollary burden on a co-equal branch of government. *See United States v. Payner,* 447 U.S. 727, 734–37, 100 S.Ct. 2439, 2445–47, 65 L.Ed.2d 468 (1979) (court of appeals' use of supervisory power to suppress evidence seized in violation of fourth amendment rights of third party not before the court inappropriate because loss of probative evidence significantly burdens law enforcement efforts of executive branch). Similarly, this Court has declined to exercise its supervisory power when the result would be a significant encroachment on an integral function of state government. *See Poteet v. Fauver,* 517 F.2d 393, 398 (3d Cir.1975) (declining to exercise supervisory power to order assignment of new judge for resentencing in state criminal proceeding out of respect for court system of equal sovereignty).

In the instant case, federal probation officials sought to revoke Mollica's probation based upon pending state criminal charges.

---

**3.** For example, in this case, had the district court granted Mollica's request for postponement on May 8, 1981, postponement would have resulted in a significant delay of the probation revocation proceeding, since the state charges against Mollica were not dismissed until August 13, 1982.

Therefore, we are not confronted with the possibility that a grant of use immunity would impose a significant burden on federal law enforcement officials.

Rather, my objection to a supervisory rule requiring use immunity in the present context concerns the effect immunity would have on state law enforcement, an integral function of state government. *Younger v. Harris*, 401 U.S. 37, 44–45, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Specifically, granting the probationer immunity would require the state to prove that evidence it seeks to use against a probationer in a subsequent criminal trial is derived from a source wholly independent of his previously immunized testimony.

As a general principle, immunization of the "fruits" of immunized testimony is necessary to satisfy the prospective witness that his testimony will not return to haunt him. *Cf. Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1970) (immunity for "use" and "fruits" in federal use immunity statute necessary and sufficient to provide full protection required by privilege against self-incrimination). Requiring the government to prove that evidence it seeks to use against a probationer is derived from a source wholly independent of his previously immunized testimony is but a natural and necessary complement of "fruits" immunity.

Proving that evidence is derived from a source independent of previously immunized testimony would impose a substantial burden on the state prosecution in a subsequent criminal trial. Although the state may in some cases be able to satisfy the independent source burden by cataloguing or freezing the evidence obtained prior to the defendant's immunization, this is not so when a continuing investigation "disclose[s] vital evidence after, though not resulting from, the immunized testimony." *United States v. Turkish*, 623 F.2d at 775. If the state cannot meet its burden in such a case, the result will be the loss of potentially crucial evidence.

Moreover, when the state's investigation is ongoing, it may take measures in order to meet the independent source burden which are in themselves costly. For example, the state may decide that it is necessary to appoint a new team of investigators and prosecutors after the probationer has been granted immunity. *United States v. Turkish*, 623 F.2d at 778. Yet, this would result in the loss of the knowledge and experience of the first team of investigators and prosecutors, as well as much duplication of effort by the second-appointed team. *United States v. Thevis*, 665 F.2d 616, 640 n. 26 (5th Cir.), *cert. denied*, —— U.S. ——, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). In recognition of these potential burdens, this Court has held that the possibility that a defense witness may be subject to future prosecution is a legitimate reason for denying him immunity. *United States v. Lowell*, 649 F.2d 950, 965 (3d Cir.1981). Therefore, given these significant potential burdens on state law enforcement activities, I would decline to use our supervisory power to promulgate a rule requiring district courts to grant use immunity as an alternative remedy in this context.

## IV.

Although in my view the decision whether to postpone probation revocation proceedings or to grant use immunity should be left with the sound discretion of the district court, in this case it appears that the district court may have denied Mollica's request for the wrong reason. Although the record in this case is not entirely clear, I believe it can be fairly read as indicating that the district court based its decision to deny Mollica's request for postponement on its interpretation of 18 U.S.C. § 3651. Apparently, the district court interpreted section 3651 as granting it jurisdiction to revoke Mollica's probation only if it commenced the revocation hearing during his five year probationary term. Because postponement of Mollica's revocation hearing would have extended the proceedings beyond this term, the court thought postponement would have deprived it of jurisdiction to revoke his probation.

The other judges of this court have indicated, and I agree, that postponement beyond the five year probationary term would not have divested the district court of jurisdiction over Mollica. This is because the district court's April 27, 1981 order requiring Mollica to appear before the court and show cause why his probation should not be revoked fell within the five year statutory period. Therefore, the district court's refusal to grant Mollica's request for postponement was apparently based on an erroneous application of section 3651.

The district court's error clearly is inconsistent with a sound exercise of discretion, and would call for a remand were it not for the procedural posture of this case. Because the Pennsylvania authorities have dismissed the criminal charges against Mollica which formed the basis of his probation revocation, postponement no longer remains a viable remedy. Moreover, it would be an abuse of discretion to grant Mollica use immunity, since immunity is not constitutionally required and would require the state, should it decide to reindict Mollica, to satisfy the "independent source" burden. Consequently, I believe a remand would be wholly ineffectual in affording Mollica the remedy to which he is entitled, a proper exercise of the district court's discretion concerning whether to postpone his probation revocation hearing or grant him use immunity.

I also would not remand to give Mollica a second chance to choose whether to testify at his probation revocation hearing. As I have indicated, the district court's misinterpretation of its jurisdiction deprived Mollica of a proper exercise of the court's discretion concerning whether to postpone his revocation hearing or grant him use immunity. The court's error did not, however, deprive Mollica of the right to choose whether to testify. Mollica exercised this right, choosing not to testify. No error of the district court entitles him to a reevaluation of this decision.

## V.

Finally, I agree with the court that on rehearing, Mollica cannot invoke the Fourth Amendment as a ground for excluding the evidence obtained by the state authorities. I also agree that the district court did not err in failing to explain the reasons for resentencing Mollica to his original five-year term of imprisonment, refusing to require the disclosure of the identity of the government's informant, or refusing to grant immunity to defense witnesses Stagno and Fimmano. .

I would affirm the judgment of the district court.

GIBBONS, Circuit Judge, with whom ALDISERT, Circuit Judge, joins, dissenting:

This court's judgment affirming the revocation of Mr. Mollica's probation is technically correct, since no majority of this court agrees upon a ground for modifying it. But while we recognize that since both of the positions we espouse are minority positions, and thus that the judgment must stand, we dissent from both majority holdings.

I. The Use Of Illegally Obtained Evidence in Parole Revocation Proceedings.

A majority of the court advances two reasons for the conclusion that illegally obtained evidence is admissible in a probation revocation proceeding. One is that a probationer, because he has already been found guilty of a crime, has only a "conditional" liberty. The other is that since the application of the exclusionary rule to probation revocation proceedings will not significantly enhance the deterrence of police misconduct it should not be applied. Neither reason is sound.

It is true that the procedural rules applicable to a criminal prosecution, such as jury trial and proof beyond a reasonable doubt, do not apply in a probation revocation proceeding. But it is a classic non-sequitur to suggest that, because the procedural rules of criminal prosecutions and of probation revocation proceedings are not identical, persons on probation have a lesser interest

in the zones of privacy and personal autonomy which the fourth amendment protects. This court recognized in *United States v. Hallman,* 365 F.2d 289 (3d Cir.1966), that the fourth amendment protects a parolee from a warrantless seizure. It held that such illegally seized evidence could not be admitted in a subsequent counterfeiting case. Certainly that case ought to control on the full applicability of the fourth amendment to probationers, for no meaningful distinction can be drawn, for fourth amendment purposes, between a probationer and a parolee. Moreover, the *Hallman* court drew no distinction based upon the nature of the proceeding in which the illegally obtained evidence was to be used. From the point of view of the victim of a fourth amendment violation, the government's further invasion of constitutionally protected privacy rights by making use of the fruits of that invasion in a public forum is the same whether that public forum is a prosecution or a proceeding to revoke probation or parole. The public exploitation of the invasion of privacy continues and aggravates it. The court becomes a partner in that exploitation to exactly the same extent in both proceedings. Matters that should, under the law, have remained private are put to a public use, to the ongoing detriment of the victim. A peeping tom looking through a bedroom window commits an egregious invasion of privacy. If he titilates his friends with a description of what he observed in the bedroom, the invasion of privacy is magnified. If a court then affords him a public forum in which the private information becomes a public record, the court participates in that invasion of privacy and magnifies it to the maximum. The exclusionary rule prohibits the court from participating in illegal invasions of privacy by maximization of the dissemination of information which under the standards of privacy enshrined in the fourth amendment should remain private.

On this issue the majority disregards the court's involvement in the ongoing invasion of the victim's privacy interests by separating the exclusionary rule from those privacy interests. That majority holds that the rule is not a personal constitutional right of the party aggrieved, but only a device designed to deter violations of fourth amendment rights. It is indeed a rule to prevent violations of fourth amendment rights—violations by the court in compounding illegal invasions of privacy by further public exploitation of material that should have remained private in the first place.

Over a decade ago I outlined the reasons why the deterrence of police misconduct as the sole justification for the exclusionary rule is a snare and a delusion. Gibbons, *Practical Prophylaxis and Appellate Methodology: The Exclusionary Rule as a Case Study in the Decisional Process,* 3 Seton Hall L.Rev. 295 (1972). Almost everything that has occurred in fourth amendment jurisprudence since then has reinforced my conviction as to the unsoundness of the deterrence rationale. The majority opinion on the fourth amendment issue is a typical example. Proceeding from the assumption, unsupported by empirical evidence, that application of the rule in criminal trials does in fact have an effect on police conduct, it jumps to the equally unsupported assumption that non-application of the rule in parole revocation proceedings will have no encouraging effect. Our visceral reaction, and we confess it is only that, is that the case for a deterrence-encouragement rationale is stronger rather than weaker in the probation revocation context. The police, often less interested in convictions than in crime prevention, already have a great incentive in dealing with parolees or probationers to seek their incarceration under the much lower evidentiary standards applicable to revocation proceedings. The holding that illegally obtained evidence may be freely used in a probation revocation proceeding sends a strong signal to law enforcement personnel that the task of building a legal case which would sustain a conviction may be shortcut in the interest of getting a probationer off the street by an invasion of his fourth amendments rights.[1]

1. An amicus curiae brief filed in the Supreme

Court by Dan Johnston, county attorney for

Our visceral reaction as to the rule's deterrence or encouragement of police misconduct is at least as probable as that of the majority on that issue.

Neither visceral reaction, however, is a sound basis for a ruling that the court should become an active participant in an ongoing illegal invasion of constitutionally protected privacy interests. The only valid reason for the exclusionary rule is that advanced by Justices Holmes and Brandeis years ago in their notable dissents in *Olmstead v. United States,* 277 U.S. 438, 469, 471, 48 S.Ct. 564, 569, 570, 72 L.Ed.2d 944 (1928). The government plays "an ignoble part" when it commits illegal invasions of privacy. *Id.* at 470, 48 S.Ct. at 569 (Holmes, J., dissenting). The evidence, therefore, is excluded "in order to preserve the judicial process from contamination." *Id.* at 484, 48 S.Ct. at 574 (Brandeis, J., dissenting). The contamination to which Brandeis referred was that caused by the active participation of the court in providing a public forum for the widespread dissemination and public use of information which should have remained private.

Brandeis was one of the first scholars to recognize the importance of individual privacy as a basic liberty. Warren and Brandeis, *The Right of Privacy,* 4 Harv.L.Rev. 193 (1890). Many years elapsed before a majority of the Supreme Court accepted his normative judgment as to the value of that liberty. Now, we concede, this court's majority is swimming with a strong tide against recognition of the value of privacy rights.[2] The head count among the courts of appeals on the precise issue of admissibility of illegally obtained evidence in probation revocation proceedings is evidence of that tide. In this court *United States v.*

*Hallman,* 365 F.2d 289 (3d Cir.1966), while technically distinguishable, put us, at least until today, in the same normative camp as the Fourth Circuit. *United States v. Workman,* 585 F.2d 1205, 1211 (4th Cir.1978). We would have this circuit stay there. It is offensive to cast federal judges in the role of peeping toms once removed, presiding over a public forum for the public dissemination of information which under the Constitution was and should have remained private. Moreover, embracing that ignoble role, as the majority on that issue does, will in the long run erode the moral authority of the court, which is its only real source of power.

We would hold that the court erred in refusing to hold a hearing to determine whether the evidence it admitted in the probation revocation proceeding was illegally obtained.

## II. The Privilege Against Self-Incrimination in Parole Revocation Proceedings

Judge Garth's separate opinion, which unfortunately does not command a majority, outlines the reasons why, when the executive branch of the federal government calls upon the article III judiciary to impose the sanction of revocation of probation, the court should insist upon either use/fruits immunity so that the probationer may testify or postponement of the revocation hearing until incrimination from testimony is no longer likely. We agree with his proposed holding. We note that his reliance on a judge-made procedural rule not specifically required by a statute or the Constitution is entirely consistent with the Supreme Court's latest pronouncement on the supervisory powers of the federal courts.

Polk County, Iowa, in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), contended that the exclusionary rule is accountable for the extremely low number of dismissals of prosecutions because of suppression of evidence, and that a retreat from *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), will be perceived by the law enforcement community as a signal that the fourth amendment should not be taken seriously. *See* argument of counsel in *Illinois v.*

*Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2323, 76 L.Ed.2d 527 (1983). Mr. Johnston's visceral reaction is informed by law enforcement experience which the members of this court lack.

2. *But see Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1977) (warrant based on knowingly false affidavit should be voided and fruits of search suppressed).

The purposes underlying use of the supervisory powers are threefold: to implement a remedy for violation of recognized rights . . .; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury . . .; and finally, as a remedy designed to deter illegal conduct. . . .

*United States v. Hasting,* —— U.S. ——, ——, 103 S.Ct. 1974, 1978–79, 76 L.Ed.2d 96 (1983) (citations omitted). All three purposes apply here. The rule Judge Garth proposes implements a probationer's privilege against self-incrimination. It also assures that the parole revocation proceeding will have the benefit of all evidence possibly favorable to the probationer, and thus that the decision is made on appropriate considerations. Finally, it deters reliance on probation revocation proceedings in circumstances in which the prosecuting authorities could not prove a substantive offense, and prevents those authorities from placing the probationer in the position of leaving a weak case unanswered or running the risk of strengthening it by self-incrimination.

Thus we dissent as well from the holding that probation revocation proceedings should go forward, absent a grant of use/fruits immunity, in the face of a valid assertion that testimony by the probationer would tend to incriminate him in respect to a pending criminal charge.

SLOVITER, Circuit Judge.

1. I agree with Chief Judge Seitz that appellant Mollica was not deprived of any constitutional rights when the district court refused to postpone Mollica's probation revocation hearing or to grant him use immunity. I agree that we should not enunciate a supervisory rule to cover this situation for the reasons set forth in Chief Judge Seitz' opinion.

2. I agree with Judge Gibbons that the district court should have held a hearing to determine whether the challenged evidence was illegally obtained. In recent decisions, the Supreme Court has grounded its rationale for the rule more on pragmatism than on principle: "The [exclusionary] rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). *See United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976). Even if viewed in that light, I am unpersuaded that probation revocation proceedings should stand on a significantly different footing than criminal trials for this purpose. Although empirical evidence is unhappily unavailable, as the Court has recognized, *see id.,* it is reasonable to assume that the deterrent effect on police misconduct would be strengthened if the exclusionary rule is applied in an unwaivering and undeviating fashion whenever the evidence is sought to be used in a proceeding which may subject the victim of the search to imprisonment. *See United States v. Workman,* 585 F.2d 1205, 1211 (4th Cir. 1978). Therefore, I would remand for the purpose of directing the district court to hold a suppression hearing. Since a majority of the court has not accepted that position, I vote to affirm.

ADAMS, Circuit Judge, dissenting from the judgment of affirmance.

I join Judge Garth's opinion except for part III, which promulgates a supervisory rule regarding use immunity and postponement of probation revocation hearings. I would vacate and remand, not on the basis of the supervisory rule, but to enable Mollica to testify if he so elects.

I.

When Mollica's counsel moved for postponement of the probation revocation hearing, the district court was concerned that postponement beyond the five year probationary period might imperil its jurisdiction over Mollica. As a result, the district court insisted on going forward. This Court today makes clear that the concern of the district court was not well founded.

If the district court had the benefit of this Court's reasoning on the jurisdictional

issue, it might have exercised its discretion to postpone the revocation hearing pending further proceedings on the state charges. Had there been a postponement, Mollica might have chosen to testify when the hearing was held; indeed Mollica's counsel represented to this Court at oral argument that Mollica would have testified. When a district court's exercise of discretion is predicated on a misapprehension of the law, the appropriate course for an appellate court is to resolve the legal question and remand the matter so that the district court can proceed in light of the clarification. This course is especially appropriate when, as in this case, the right of the probationer to testify appears to have been compromised by the district court's uncertainty. Although the district court did not deny Mollica the right to testify, it needlessly burdened the exercise of that right.

Since the district court's decision, the state criminal charges against Mollica have been dismissed. Thus, the issue before the district court, whether to postpone the revocation hearing while the state proceedings were pending or grant Mollica use immunity, would not be present on remand. Chief Judge Seitz contends that the district court on remand must necessarily hold the hearing without granting immunity. Even if this view is correct, it does not follow that remand is unwarranted. Fairness and caution support a decision to remand because Mollica may now choose to testify at the probation revocation hearing, even in the absence of immunity, inasmuch as the state criminal charges have been dropped and might not be revivable.

## II.

The proposed supervisory rule requires—without exception—that a district court

postpone probation revocation proceedings or grant use immunity to probationers who wish to testify, but are unwilling to do so in the absence of a postponement. The rule is based upon Judge Garth's conception of the "better practice"; it is not dictated by precedent, statute, or constitutional provision. This rule, as I see it, is deficient on three grounds: (a) it is unduly vague and provides insufficient guidance for district courts; (b) it sweeps too broadly and represents a rigid approach in an area better left to the discretion of district judges and probation officials; and (c) it constitutes an improvident use of this Court's supervisory power.

### A.

Although the supervisory rule purports to prescribe a definitive procedure for district courts to follow, its contours are obscure and incomplete. Judge Garth makes clear that revocation proceedings should be postponed, but he sets no time limits on the postponement. In the case at hand, he would apply the postponement rule, even though charges are no longer pending against Mollica and the revival of any previous charges is speculative. Judge Garth's proposal might well constrain a district court for the entire period of the statute of limitations. Mollica's hearing, for example, could be delayed for at least two years from the date he allegedly committed the offense and possibly much longer.[1] In a case involving murder or voluntary manslaughter, postponement could be indefinite.[2]

The proposed supervisory rule is phrased in such a way as to suggest that postponement during the pendency of criminal charges would be the norm and use immunity, the exception. Judge Garth does not

1. Mollica was charged under 18 Pa.Cons.Stat. Ann. §§ 5512, 5514, & 903(a)(1) (Purdon 1973). At the time he was charged, the applicable statute of limitations was two years, 42 Pa. Cons.Stat.Ann. § 5552 (Purdon 1981), but the time during which the state charges were pending would have been excluded from this period (id. § 5554). Pennsylvania has recently amended § 5552 to extend the limitations period for such charges to five years. Act No.

1982–122, S.B. No. 563, 2 Pa.Legisl.Service 1982, 587 (Purdon). We express no view as to whether this amendment is applicable to Mollica. Even before the 1982 amendment, many offenses had five year limitations periods.

2. See, e.g., 42 Pa.Cons.Stat.Ann. § 5551 (Purdon 1981) (unlimited period for prosecution of murder or voluntary manslaughter).

explain why this preference exists, but he requires that the district court "articulate on the record the reasons for" choosing one course over another. No reason for this requirement is advanced, but presumably the rationale is to facilitate appellate review. Judge Garth thus implies that the district court's discretion to choose postponement rather than use immunity is limited in some way. Yet there is no hint as to what those limitations might be.

If, instead of propounding a rule, Judge Garth had merely enumerated various factors that could inform the district court's exercise of discretion, the failure to articulate a rationale would be less objectionable. But when we take it upon ourselves to ordain that the district court adhere to what we consider the "better practice" or face reversal, it is incumbent upon us to delineate that practice with some precision.

### B.

Even assuming that the rule could be more precisely crafted, its rigid application would create an unsatisfactory choice for district courts and prosecutors contemplating probation revocation proceedings: they must grant use immunity or postpone the proceedings. Yet there might well be exceptional circumstances in which the Government can demonstrate a compelling need to avoid postponement, but in which a grant of immunity would be unacceptable. The rule would also have unfortunate consequences in the ordinary probation revocation case in which use immunity is granted. The probationer's testimony will often have little effect on the outcome of a revocation proceeding; the use immunity requirement might do no more than burden the state in subsequent criminal trials with "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled [immunized] testimony." *Kastigar v. United States,* 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1972).

In cases involving judicially created use immunity for defense witnesses, we require that the defendant show that the proffered testimony is both clearly exculpatory and essential to his case. *Government of Virgin Islands v. Smith,* 615 F.2d 964, 972 (3d Cir. 1980). Even *Smith* may have expanded judicial power too far. The Supreme Court has recently declared that "[n]o court has authority to immunize a witness." *Pillsbury Co. v. Conboy,* —— U.S. ——, ——, 103 S.Ct. 608, 616, 74 L.Ed.2d 430 (1983). Although this statement appears in the context of a discussion of defense witness immunity pursuant to statute, the Court may have meant to express the view that the judiciary lacks even the nonstatutory power to immunize a witness. If the district court lacks the authority to immunize a witness, it is questionable whether it possesses the power to immunize probationers.

Probation revocation proceedings do not require special treatment. Immunity seems no more necessary than it does when a defendant faces multiple prosecutions, perhaps in both federal and state court, for crimes arising out of the same or a related incident. To be sure, probation revocation proceedings involve a lower standard of proof and more relaxed rules of evidence and procedure than do parallel criminal trials,[3] and probationers consequently may feel compelled to testify. However, these procedural differences do not justify a blanket supervisory rule, and Judge Garth does not so suggest.

The district court should have the discretion to postpone revocation hearings without being required to grant use immunity. An appellate court cannot anticipate all the problems that might arise in individual cases. Because of the difficulties associated with the sole alternative to postponement, use immunity, the district court may be forced to postpone many hearings it believes for good reason should be held promptly.

**3.** For example, we hold today that the exclusionary rule does not apply in probation revocation proceedings.

## C.

Assuming that the proposed rule could be made sufficiently precise and flexible, I do not agree that the promulgation of such a rule constitutes an appropriate exercise of our supervisory power. Unlike the rules of practice in federal courts, this supervisory rule has not been promulgated under the exacting procedures established by the Judicial Conference of the United States pursuant to 28 U.S.C. § 331 (1976).[4] Nor was the rule published in proposed form, subjected to comment and criticism, reported to elected public officials for modification or disapproval, or consolidated in an accessible format. Deviation from the carefully delineated path established for the adoption of the federal rules should occur only in limited circumstances. These procedures and the policy favoring uniformity among the federal circuits make the analogy to state supervisory rules inapposite. See slip op. at 23.

Although this Court has promulgated supervisory rules on a number of occasions, they generally address matters peculiarly within the province of the judiciary.[5] A survey of the case law indicates that such rules are relatively narrow in compass and relate primarily to the regulation of practices followed by judges, the admissibility of evidence, the supervision of grand juries, and the conduct of counsel in court. See Schwartz, supra note 4, at 509–12.[6] By contrast, the rule proposed today has a di-rect impact on the prerogatives of another branch of the federal government as well as on the prerogatives of the states. While such incursions are not unprecedented, this Court, as a matter of general policy, has rarely taken such a drastic step in the absence of a constitutional mandate.[7] It is apparent that encroachments of the kind advanced by Judge Garth should be based on more than notions of what constitutes the "better practice."

A proper regard for our limited role would counsel that no rule issue in the absence of a showing that the rule is needed. There is no evidence, nor any reason to believe, that the absence of a special rule created significant problems in this case.[8] Had it not been for the jurisdictional issue which the Court resolves today, the probation officer undoubtedly would have followed its usual policy and awaited the disposition of the pending state criminal charges before seeking a revocation hearing. If the probation officials had sought an earlier hearing, the district court most likely would have denied the request. Only a misunderstanding about the district court's jurisdiction, and not the absence of a supervisory rule, prevented the postponement of Mollica's hearing while state proceedings were pending. Thus, the proposed rule may well be a solution to a nonexistent problem.

A supervisory rule governing the timing of revocation hearings might be legitimate;

4. The process by which federal court rules are adopted is summarized in Schwartz, *The Exercise of Supervisory Power by the Third Circuit Court of Appeals,* 27 Vill.L.Rev. 506, 539–40 (1982).

5. *See generally* Note, *A Separation of Powers Approach to the Supervisory Power of the Federal Courts,* 34 Stan.L.Rev. 427 (1982); Note, *The Supervisory Power of the Federal Courts,* 76 Harv.L.Rev. 1656 (1963).

6. *See* Schwartz, *supra* note 4, at 509 n. 15 and 527–51.

7. *Cf. Government of Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980) (requiring judicially created immunity, under certain conditions, to vindicate constitutional right to fair trial); *United States v. Herman,* 589 F.2d 1191, 1204 (3d Cir.1978) ("a case might be made that the

court has inherent authority to effectuate the defendant's compulsory process right by conferring a judicially fashioned immunity upon a witness whose testimony is essential to an effective defense"), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979); *United States v. Inmon,* 568 F.2d 326, 333 (3d Cir.1977) (defendant given limited use immunity because he "may not be required, as the cost of litigating what he and his counsel believe to be a valid fifth amendment double jeopardy claim, to waive the fifth amendment privilege against self-incrimination in a later trial").

8. *See United States v. Hasting —— U.S. ——, ——, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1983) (supervisory rule inappropriate when the error to which the rule is addressed is harmless).

although no federal guidelines address the issue, the subject is arguably within the traditional competence of the courts. *See* Schwartz, *supra* note 4, at 539–40. Nonetheless, the absence of political accountability, the lack of procedural safeguards, the intrusion on prosecutorial discretion, and the superfluity of a rule absent a showing of need, all suggest circumspection in the exercise of an appellate court's supervisory power. If some guidance for district courts is advisable, we would do better, I believe, to set forth the considerations that should inform the exercise of discretion by district judges.

### III.

Despite the fact that nine judges of this Court would remand, the opinion announcing the judgment of the court proceeds on the theory that we must affirm the judgment of the district court because no *single* justification for remanding commands a majority. I disagree with both the abstract proposition and its applicability here.

Ordinarily, a judgment represents the agreement of a majority of the members of a court that it is appropriate to dispose of a case in a particular way. It is by no means essential that a rationale supporting a valid judgment also enjoy the majority's favor. Indeed it is not uncommon for a reversal or a remand to be based on a variety of grounds, none of which has sufficient support to become binding precedent. *See, e.g., Wolman v. Walter,* 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977); *Tilton v. Richardson,* 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971). While such decisions may frustrate a court's role of providing guidance for lower courts and thus constitute an abdication of its responsibility to those "depending on it for direction," Note, *Plurality Decisions and Judicial Decisionmaking,* 94 Harv.L.Rev. 1127, 1128 (1981), the absence of a consensus rationale does not invalidate the court's judgment as to a particular result. To hold otherwise would require all appellate courts to affirm when a majority supports a contrary disposition.

In the present case, the district court could not invoke the exclusionary rule on remand or grant use immunity, since a majority of this Court rejects both options. But three judges (Adams, Hunter, and Becker) would remand to ensure that Mollica's right to testify was not compromised by the lower court's erroneous concern regarding its jurisdiction,[9] and I do not believe that a majority of this Court has foreclosed that option.

Indeed the only disposition that appears inconsistent with the various opinions is an affirmance. It is scant consolation to Mollica that nine judges of this Court have concluded that his rights may have been violated in a proceeding which imposed a five year sentence.

JAMES HUNTER, III, and BECKER, Circuit Judges, join in this dissent.

### SUR PETITION FOR REHEARING

GARTH, Circuit Judge.

The petition for rehearing filed by appellant, Primo V. Mollica, in the above entitled case having been submitted to the judges who participated in the decision of this court, and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

ADAMS, Circuit Judge, Statement Sur Petition for Rehearing:

The petition for rehearing filed in this case confirms a number of propositions that

---

**9.** Although, on remand, Mollica would again face the dilemma of whether to testify, he might now decide for strategic reasons that he should. He might no longer care about giving evidence to the state if he believes that the state charges will not be reinstated or will carry relatively little sanction. Alternatively, Mollica might be so concerned with the federal probation revocation proceedings that he might want to testify in the hopes of exculpating himself.

make remand appropriate. Mollica now makes it quite clear that if there were a remand he would testify without a grant of immunity at a probation revocation hearing and that his testimony would demonstrate that the conditions of his probation had not been violated. Despite these statements, Mollica must now begin a five year term of imprisonment as a result of having asserted a constitutional claim before the district court. Since this seems manifestly unfair and, indeed, inconsistent with the federal courts' role in protecting constitutional rights, I vote for rehearing.

There is another reason why rehearing is in order. Even though a majority of the judges sitting in banc believes that Mollica should have an opportunity to be heard, the judgment compelling revocation of probation comes about because no single rationale for remand can command a majority. Such a result appears inconsistent with the approach taken by the Supreme Court of the United States in the recently decided *Guardians Association v. Civil Service Commission of the City of New York,* —— U.S. ——, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983).

Circuit Judge JAMES HUNTER, III and Judge BECKER join in this statement.

WEIS, Circuit Judge, Statement Sur Petition for Rehearing:

Although I continue to believe that Mr. Mollica was entitled to use immunity had he chosen to testify, his willingness to forego that protection has brought about a significant change in the posture of this case. In view of the present circumstances, I vote for rehearing.